**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Criminal No. 14-0207 (DWF/TNL) |
| Respondent-Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Christopher Lindsey, | |
| Defendant. | |

Christopher Lindsey, Defendant, *Pro Se*.

Matthew S. Ebert and Lola Velazquez-Aguilu, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

## INTRODUCTION

This matter is before the Court on Defendant Christopher Lindsey's ("Lindsey") *pro se* motion for compassionate release in light of the COVID-19 pandemic.[1] (Doc. No. 88 ("Motion").) The United States of America (the "Government") opposes Lindsey's Motion. (Doc. No. 94.) For the reasons discussed below, the Court respectfully denies Lindsey's Motion.

## BACKGROUND

On August 26, 2014, Lindsey entered pleas of guilty to three counts of a twenty-three-count indictment, pursuant to a plea agreement: namely, Count 1, conspiracy to

---

[1] The Court also received and considered Lindsey's reply. (Doc. No. 96 ("Reply").)

commit bank and wire fraud; Count 17, aggravated identity theft; and, Count 21, conspiracy to defraud the United States.[2]  (Doc. No. 34 ¶ 2.)

On April 13, 2015, this Court sentenced Lindsey to a total term of 180 months' imprisonment, consisting of 156 months on Count 1, and 120 months on Count 21, to be served concurrently; as well as 24 months on Count 17, to be served consecutive to the sentences imposed on Counts 1 and 21, followed by 5 years of supervised release.  (*See* Doc. Nos. 43, 44; 61 (collectively, ("Judgment").)  The Court also ordered restitution in the amount of $548,869.61.  (Judgment.)  During sentencing, the Court observed that "anything less than 180 months would not promote respect for the law."[3]  (Doc. No. 52 ("Sent. Tr.") at 21.)

Lindsey is now incarcerated at FPC Duluth.  BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed June 11, 2020).  According to the Bureau of Prisons ("BOP"), Lindsey's release date is March 27, 2027.  *Id*.

Lindsey appealed his sentence to the Eight Circuit on April 29, 2015.  (Doc. No. 46.)  The Eighth Circuit dismissed his appeal on November 17, 2015 based upon Lindsey's valid waiver of appeal.  (Doc. No. 63.)  On April 14, 2017, Lindsey filed a

---

[2]   Lindsey was on federal probation when he was indicted.  (Doc. No. 18 at 2.)  After concluding that "no condition or combination of conditions of bond [would] reasonably ensure" the safety of the community or Lindsey's appearance in court, the Court issued an Order of Detention on June 27, 2014.  (*Id.* at 4.)

[3]   The Court stated, "I view you as the ring leader [of] the whole group" and cited its concern that Lindsey's conduct transpired over "an 8-or-9-plus-year period, and coming in and out of jail, and the conduct continued."  (Sent. Tr. at 20-21.)

motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Doc. No. 76.) The Court denied Lindsey's § 2255 motion on August 14, 2017. (Doc. No. 83.)

Lindsey now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) on the grounds that sleep apnea and hypertension make him uniquely vulnerable to the COVID-19 virus.[4] (Motion at 13-14,20; *see also* Doc. No. 95 ("Medical Records").) Lindsey asserts that he is a "non-violent low-risk offender" and that because he is "not a danger to the public," he "has earned his placement at a community custody camp" and should therefore be released.[5] (Motion at 20.) Lindsey also asserts that his family is supportive of release, and "he has detailed an employment and home plan in Minneapolis, MN crafted to ensure success." (*Id.* at 21.) The record reflects that Lindsey submitted a compassionate release request to the warden at FPC-Duluth on April 1, 2020. (Doc. No. 94-1.)

The Government opposes Lindsey's Motion on the grounds that his medical conditions are well-controlled, there have been no reported cases of COVID-19 at FPC-

---

[4] Lindsey asserts that he requires a breathing machine due to sleep apnea. (Motion at 14.)

[5] Lindsey contends that due to the nature of FPC-Duluth which does not have fences or cells, he is "daily exposed to more than 600 individuals (inmates and staff) where he is unable to social distance to protect himself." (Motion at 20.) Lindsey argues further that "FPC-Duluth has failed to take adequate steps to slow or prevent COVID-19 spread." (Reply at 1.) Lindsey asserts that he is currently housed in a 225 square foot cell with five other beds, meals are eaten communally, and computers and phones are not sanitized between use by different inmates. (*Id*.) Lindsey also points to another individual who was released from FPC-Duluth pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and argues that he too is safer outside of prison. (*Id*. at 3.)

Duluth, and that he continues to pose a significant danger to the safety of the community. (Govt. Opp. at 15-25.)

## DISCUSSION

Under 18 U.S.C. § 3582(c)(1)(A)(i), a Court may reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement addressing reduction of sentences under § 3582(c)(1)(A) asserts in relevant part that a court may reduce a defendant's term of imprisonment after considering § 3553(a) factors if it finds that: (1) "extraordinary and compelling reasons warrant the reduction;" (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (3) "the reduction is consistent with this policy statement."[6] USSG § 1B1.13 ("Statement"). The Statement includes an application note that defines "extraordinary and compelling reasons" as (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to

---

[6] While the policy statement refers only to motions filed by the BOP Director, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" to mean that the Statement also applies to motions filed by defendants.

recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories.[7]  *Id.*

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A).  Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[8]  *Id.*

Because more than 30 days have lapsed since Lindsey submitted his request to the warden at FPC-Duluth, the Court finds that his Motion is properly before the Court. Notwithstanding, after a careful review of Lindsey's Motion, supporting documentation, and Medical Records, the Court finds that Lindsey's circumstances do not meet the demanding standard for compassionate release.  Specifically, the Court finds that Lindsey's medical issues are insufficiently extraordinary or compelling to warrant immediate release.  According to his most recent BOP medical report on April 30, 2020,

---

[7]  The Statement cites examples of qualifying medical conditions including metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia.  (Statement.)

[8]  While judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A).  *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

Lindsey's "blood pressure look[s] good," and "no further blood pressure checks [are] needed at this time." (Medical Records at 2.) Lindsey's Medical Records also reflect that his sleep apnea is "well controlled" and "does not rise to the level of chronic care necessity."[9] (Medical Records at 19.)

The Court understands Lindsey's concerns with respect to the conditions at FPC-Duluth and his belief that FPC-Duluth has failed to take proper measures to prevent the virus; however, the Court observes that there are currently no reported cases of COVID-19 at FPC-Duluth.[10] While it is correct that a different individual was recently released from FPC-Duluth pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), no two cases are the same; each analysis is highly dependent on the circumstances unique and personal to each individual. *See United States v. Alvarado*, Cr. No. 18-283, 2020 WL 3041504, at *3 (D. Minn. May 27, 2020.) Here, the Court finds that the circumstances presented simply do not reach the high threshold necessary to warrant immediate release.

---

[9]     On a visit dated January 22, 2020, Lindsey's Medical Records state that "[i]t is highly unlikely that [Lindsey] has [hypertension] but rather excessive salt intake." (Medical Records at 19.)

[10]    The Court also notes that effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued effective operation of the federal prison system." *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp (last accessed June 11, 2020). Those steps include limiting visits and internal movement, increased hygiene measures, and screening of both staff and inmates. (*Id.*) Current measures also include a 14-day isolation period, and limited group gatherings. *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan Phase V, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last accessed June 11, 2020.)

In short, while the Court recognizes Lindsey's concerns, particularly in light of the COVID-19 pandemic, the Court finds that the circumstances do not present an extraordinary and compelling reason to warrant release.[11]  Accordingly, the Court respectfully denies Lindsey's Motion.

## CONCLUSION

For the reasons set forth above, the Court finds that Lindsey is ineligible for compassionate release because he does not present an extraordinary and compelling reason to warrant release.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Christopher Lindsey' *pro se* Motion for Release (Doc. No. [88]) is respectfully **DENIED**.

Date:  June 15, 2020                                                s/Donovan W. Frank
                                                                                  DONOVAN W. FRANK
                                                                                  United States District Judge

---

[11]   Because Lindsey fails to present "extraordinary and compelling" reasons to warrant release, the Court need not consider the § 3553(a) factors whether he poses danger to the safety of any other person or to the community.  *See* 18 U.S.C. § 3582(c)(1)(A); Statement.